## PEOPLE v FINK

Docket No. 107514. Decided February 3, 1998. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals, and reinstated the judgment of the circuit court. Rehearing denied *post*, 1230.

David J. Fink was convicted by a jury in the Ingham Circuit Court, Lawrence M. Glazer, J., of one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct involving a thirteen-year-old resident of a home for children with severe behavior problems where the defendant was a staff worker. In advance of trial, the court quashed the defendant's subpoena of certain records, finding that they were privileged. The Court of Appeals, WEAVER, P.J., and GRIFFIN, J. (SHEPHERD, J., dissenting), affirmed the convictions in an unpublished opinion per curiam (Docket No. 108107). The Supreme Court remanded the case to the circuit court for an in-camera review of the documents. On remand, the court denied a new trial, finding that the documents were not material under *Pennsylvania v Ritchie*, 480 US 39 (1987). After remand, the Court of Appeals, McDONALD, P.J., and WAHLS and D. B. LEIBER, JJ., reversed in an unpublished opinion per curiam (Docket No. 167536). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, WEAVER, and TAYLOR, the Supreme Court *held*:

The circuit court did not abuse its discretion in denying the defendant's motion for a new trial on the basis that the requested documents were not material to the case.

1. The touchstone of materiality is a reasonable probability of a different result. A reasonable probability of a different result exists where suppression of the evidence undermines confidence in the outcome of the trial. The evidence must be considered collectively, not item by item. Evidence protected by privilege should be provided only if it is essential to the defense.

2. In this case, the Court of Appeals improperly substituted its assessment for that of the circuit court. The aggregate effect of the disputed documents, when viewed in the full context of the trial,

could not reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict. Nothing in the materials would have constituted significant new information that could have been used for impeachment purposes.

Reversed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the trial court committed constitutional error. The undisclosed information not only was favorable to the defense, it was also material because there is a reasonable probability that the outcome of the trial would have been different had the information been disclosed.

A determination of materiality does not require that the defendant demonstrate by a preponderance that the disclosure of the evidence would have resulted in acquittal. Rather, the defendant merely must show that there is a reasonable probability of a different result. In this case, an analysis of the facts shows that there is a reasonable probability that the outcome would have been different. The circuit court committed error requiring reversal in holding that the suppressed information was not material to defendant's case.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Donald E. Martin*, Prosecuting Attorney, *Samuel R. Smith*, Chief Appellate Attorney, and *Susan L. Leduc*, Deputy Chief Assistant Attorney, for the people.

*Lawrence J. Emery* for the defendant.

PER CURIAM. The issue presented is whether the circuit court, which conducted an in-camera review of privileged documents on remand from this Court, abused its discretion in denying a new trial on the basis that the documents were not material to the case. We hold that the circuit court did not abuse its discretion and, thus, reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

The defendant, a staff worker at a home for children with severe behavior problems, was convicted by a jury of sexually assaulting a thirteen-year-old resident in 1985. The circuit court imposed concurrent prison terms of ten to twenty years and seven to fourteen years for one count each of first- and second-degree criminal sexual conduct.[1]

The incident was not reported until 1986, when a social worker spoke with a fourteen-year-old resident about reports that the boy had observed sexual activity between the defendant and a younger boy. By this time, the defendant had quit his part-time job at the facility.

After the social worker spoke with the younger boy, police investigated the matter and formally charged the defendant with sexual misconduct. The social worker and the two boys were the main witnesses for the prosecution.

In advance of trial, the defense subpoenaed certain records from the facility where the boys were residing, as well as another agency. The two agencies responded that the records were protected by the statute pertaining to the licensing of child-care organizations,[2] and a provision in the Occupational Code regarding certified social workers.[3] The circuit court agreed that the files were privileged, and quashed the subpoena.

---

[1] MCL 750.520b(1)(b);  MSA 28.788(2)(1)(b)  and MCL 750.520c(1)(b); MSA 28.788(3)(1)(b).

[2] MCL 722.111 *et seq.*;  MSA 25.358(11) *et seq.*

[3] MCL 339.1610; MSA 18.425(1610).

The Court of Appeals affirmed the defendant's convictions and sentences in an unpublished opinion per curiam.[4]

The defendant appealed to this Court. Without retaining jurisdiction, we remanded the matter to the circuit court for an in-camera review of the documents requested by the defendant. Our order further provided:

> If any of the documents are favorable to defendant and material to the case, a new trial should be granted. If the documents were not favorable or material to defendant's case, any error in failing to have such an inspection prior to trial would be harmless. *Pennsylvania v Ritchie*, 480 US 39 [107 S Ct 989; 94 L Ed 2d 40] (1987). [437 Mich 987 (1991).]

On remand, the circuit court held a hearing regarding the nature of the inspection it had been ordered to conduct. The court said that it would be looking for evidence of motive to harm the defendant, previous false accusations made against staff members by either of the two boys, evidence of a psychological condition related to the credibility of the two boys or their account of the events, a history of collusion between the two boys on false accusations against anyone, and the inability of either boy to understand the difference between truth and falsehood.

Following its review, the circuit court reported to the parties in 1992 that it had not found any such evidence. Nonetheless, the court said that it was going to turn over several documents to the defense that might "tend to be helpful," although they would not have changed the outcome of the trial. "But I felt, in

---

[4] Issued April 30, 1990 (Docket No. 108107).

fairness to the defense, I should identify them for the defense and make them available." The court said that the best the defense could have done if aware of the reports was to subpoena the authors and question them regarding what they had observed.

On the basis of this disclosure, defense counsel located the authors of the documents and obtained their testimony. The circuit court denied the defendant's amended motion for a new trial in 1993, however, reaffirming that the documents were not *material*, as defined in *Pennsylvania v Ritchie*, *supra*.

The defendant again appealed to the Court of Appeals. In an unpublished opinion per curiam, the panel unanimously reversed.[5]

The Ingham County Prosecutor asks this Court to reverse the decision of the Court of Appeals and to reinstate the decision of the circuit court.

II

In *Pennsylvania v Ritchie*, the defendant sought access to files of the protective-service agency that had investigated allegations of sexual misconduct involving his minor daughter, as well as an earlier allegation of abuse. The agency refused to release the files on the ground that they were protected by statutory privilege, and the trial court declined to order disclosure. The Pennsylvania Supreme Court held that the ruling violated both the Confrontation and Compulsory Process Clauses of the Sixth Amendment. Saying that the defense must be given a chance to examine the information, the court remanded for fur-

---

[5] Issued September 20, 1996 (Docket No. 167536).

ther proceedings to determine whether a new trial should be granted.

The United States Supreme Court said in *Ritchie* that the appropriate analysis is under the Due Process Clause of the Fourteenth Amendment. Under due process principles, the prosecution is obligated to disclose evidence that is both favorable to the defendant and material to the determination of guilt or punishment. Evidence is material only if there is a reasonable probability that the trial result would have been different, had the evidence been disclosed.[6]

In *Kyles v Whitley*, 514 US 419; 115 S Ct 1555; 131 L Ed 2d 490 (1995), the Court explained that there are four aspects of "materiality." First, the touchstone of materiality is a "reasonable probability" of a different result. The question is not whether the defendant would have been more likely than not to have received a different verdict, but whether he received a fair trial in the absence of the evidence, i.e., a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result exists where suppression of the evidence undermines confidence in the outcome of the trial.

Second, the *Kyles* Court said that the inquiry into materiality does not test the sufficiency of evidence. Rather, one claiming a violation must show that the favorable evidence could reasonably be taken to put the whole case in such a different light so as to undermine confidence in the verdict.

---

[6] The *Ritchie* Court affirmed the remand for further proceedings, but reversed the state supreme court's directive that the defense be allowed to examine the records. An in-camera inspection by the trial court would fully protect both the defendant's and the prosecution's interests in ensuring a fair trial, the Court said.

Third, if there is a finding of constitutional error, it cannot be considered harmless.

Fourth, the suppressed evidence must be considered collectively, not item by item.

Although the Supreme Court did not mention its 1987 ruling in *Ritchie* when it decided *Kyles* in 1995, the due process analysis in *Kyles* clearly applies to arguments like those presented in *Ritchie*, including the claims of this defendant. The *Ritchie* Court discussed prior case law in the context of the requirements for a fundamentally fair trial under the Fourteenth Amendment. In *Kyles*, the Court simply enlarged upon that discussion.

Seven years after *Ritchie* and one year before *Kyles*, this Court decided *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). We held that where a defendant can establish a reasonable probability that privileged records are likely to contain favorable and material information that is necessary to the defense, the court should conduct an in-camera review. Consistent with *Ritchie*, we held that evidence protected by privilege should be provided to defense counsel only if the court finds that the evidence is essential to the defense.[7] We found that defendant Stanaway's pretrial request had fallen short of the specific justification necessary to obtain in-camera review. We said that the record in the companion case involving defendant Caruso was not sufficiently clear regarding the grounds for the in-camera

---

[7] After this Court decided *Stanaway*, we amended MCR 6.201(C) to provide for the in-camera inspection of records protected by privilege, under the circumstances discussed in *Stanaway*. The amendment took effect July 1, 1996.

inspection ordered by the trial court, and that a remand was necessary. *Id.*, pp 681-683.[8]

### III

In the case before us, the documents that the circuit court released consisted of 1985 reports from two teachers regarding the older boy who allegedly witnessed the sexual misconduct, and a 1983 review summary written about the younger boy by a social worker with another agency.[9] The teacher evaluations indicated that the witness was an "accomplished liar and thief," and that he told falsehoods "even when confronted with direct evidence of wrongdoing and will insist loudly that he didn't do anything." The social worker's report stated that while in two foster-care homes, the younger boy had said he would "report adults to various authorities, threatening to charge them with various forms of abuse, if he was not granted his every wish . . . ." The report noted that there was no concern of abuse or neglect in either home, and the agency believed the threats demonstrated the boy's need to be manipulative and in control. His behavior also included "sexual provocation directed mostly at other children."

The circuit court denied the defendant's motion for a new trial on the ground that nothing in the reports related to motive, and there was no psychiatric or psychological description that related to either boy's account of the incident. Nor were there statements

---

[8] Defendant Stanaway challenged the denial of discovery on appeal, following his conviction. The prosecution brought an interlocutory appeal of the trial court's order granting defendant Caruso's request for an in-camera inspection.

[9] There was a fourth document, a one-page "Parents' Questionnaire," but the three reports were the primary concern.

that would tend to impeach either boy's account, and there was no evidence of false accusations against staff members, collusion or friendship, or the inability of either boy to understand the difference between the truth and a lie.

As for the 1992 testimony of the two teachers who had written about the older boy, the court noted that neither could recall the basis for her report, only that it reflected observations rather than hearsay. Both also agreed that all the students at the facility had emotional problems, and many of them lied. With regard to the younger boy, the social worker could not recall specific conversations or incidents that she had observed. She did remember the boy's appearance, however, and that "he was very up front in some ways." She said she would not use the word "deceptive" to characterize him, however.[10]

The circuit court concluded that it was purely speculative whether any of these witnesses would have had a better memory at the time of the 1988 trial, or six months before trial. Regardless, their testimony would have been of questionable relevance as a collateral attack on credibility, and any basis for reputation evidence also was speculative. Moreover, jurors had the opportunity to judge the credibility of the defendant and the two boys. While there was evidence that the boys sometimes did lie, there was no evidence of a motive to falsely accuse the defendant.

In reversing the circuit court, the Court of Appeals reasoned that the documents released by the circuit court were the strongest evidence the defendant had.

---

[10] One of the teachers testified at a hearing before the circuit court, and the other teacher and the social worker testified by deposition.

Not only did the social worker's report indicate that the younger boy had threatened to accuse adults of abuse in order to exert control, but there was less likelihood of potential bias because the social worker was from a different agency. As for the two reports about the older boy, they were the only evidence that directly challenged his reputation for veracity, and were written by teachers who did not work with the defendant, the Court said. It was not dispositive that the documents did not refer to false accusations against staff members at the present facility because past false accusations against other persons are relevant in assessing credibility in a subsequent case.

IV

We generally review a trial court's determinations of evidentiary issues for an abuse of discretion. *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996), citing *People v Perkins*, 424 Mich 302, 308; 379 NW2d 390 (1986). This includes decisions on discovery requests. *Stanaway*, p 680. Close questions arising from the trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995), quoting *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982). The trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *Id.*

The circuit court in this case did not abuse its discretion in denying the defendant's motion for a new trial on the basis that the requested documents were not "material" within the meaning of federal precedent as explained in *Kyles* and *Stanaway*. The Court

of Appeals improperly substituted its assessment for that of the circuit court.

As we noted, the United States Supreme Court has said that the touchstone of materiality in a circumstance such as this is a "reasonable probability" of a different result.[11] The question is whether, in the absence of the disputed evidence, the defendant received a fair trial, i.e., a trial resulting in a verdict worthy of confidence. The suppressed evidence must be viewed collectively, not item by item.

We disagree with the Court of Appeals that the aggregate effect of the disputed documents, when viewed in the full context of the trial, "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, p 435. The younger boy admitted at trial that he told lies and that he acted out sexually both at the facility and in foster homes. He also admitted setting up children and staff by making false accusations, and that he sexually propositioned other boys and staff members.

---

[11] Where the federal and state constitutions contain virtually identical provisions, the federal constitution should be followed, absent compelling reasons for an expansive interpretation of the state constitution. *Stanaway*, p 649, n 1.

US Const, Am XIV provides, in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . .

The Michigan counterpart, Const 1963, art 1, § 17, provides, in part:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law.

Moreover, one of the defendant's co-workers testified that the boy made sexual propositions to other children on numerous occasions, that his general reputation for truthfulness was not good, and that there was nothing he would not do sexually. Thus, nothing in the materials would have constituted significant new information that could have been used for impeachment purposes. The jury also was well aware of the troubled background of the older child.

Although the circuit court did not have the benefit of *Kyles* or *Stanaway* when it denied the defendant's amended motion for a new trial in 1993, on remand from this Court, the circuit court determined that the documents in question were not material to the defendant's case under *Ritchie*. As we have explained, such evidentiary rulings are entrusted to the discretion of the trial court, and there was no abuse of discretion in this instance. The fact that the circuit court earlier had released several documents, anyway, for the reason that they might have been "helpful" to the defense, does not change the analysis or transform the circuit court's 1993 ruling into an abuse of discretion.

V

For the reasons given, and in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER, and TAYLOR, JJ., concurred.

CAVANAGH, J. (*dissenting*). Because I find that the trial court committed constitutional error, I respect-

fully dissent. I agree with the unanimous Court of Appeals panel, which held that the undisclosed information was not only favorable to the defense, it was also material in that there is a reasonable probability that the outcome of the trial would have been different had the information been disclosed.

As the United States Supreme Court stated in *Kyles v Whitley*, 514 US 419, 433-434; 115 S Ct 1555; 131 L Ed 2d 490 (1995), "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [*United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985)] (opinion of Blackmun, J.); *id.* at 685 (White, J., concurring in part and concurring in judgment)."

A determination of materiality does not require that the defendant demonstrate "by a preponderance" that the disclosure of the evidence would have resulted in his acquittal. Rather, the defendant must merely show that there is a "reasonable probability" of a different result, "and the adjective is important." *Kyles, supra* at 434.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Bagley*, 473 US 678.
>
> The second aspect of [] materiality bearing emphasis here is that it is not a sufficiency of the evidence test. A defendant need not demonstrate that after discounting the inculpa-

tory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a [] violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. [*Id.* at 434.]

The majority concludes that even though the trial court did not have the benefit of the *Kyles* decision, it nevertheless made the correct determination because the circuit court determined that the information "would not have changed the outcome of the trial." *Ante* at 452. This is precisely the incorrect standard that the United States Supreme Court sought to correct in *Kyles*. The difference being that the defendant must only demonstrate a "reasonable probability" that the outcome may have been different. The defendant does not have to demonstrate, as the circuit court and majority state, that the outcome "would have been" different, only that there is a reasonable probability of such a result. In fact, the majority in *Kyles* specifically condemned the dissent for "assum[ing] that Kyles must lose because there would still have been adequate evidence to convict even if the favorable evidence has been disclosed." *Id.* at 435, n 8.

The majority states that despite the "helpful" nature of the documents to the defense, the trial judge did not abuse his discretion in refusing to grant a new trial. (*Ante* at 460.) I disagree. The Supreme Court's holding in *Kyles* states that the defendant need not prove that the result would have been different, only that there is a reasonable probability of such a result.

If a document is "helpful" to the defense, is there not at least a reasonable probability the outcome would have been different? I believe so, especially where, as here, the document contained statements favorable to the defense yet not admitted at trial.

An analysis of the facts shows that there is a reasonable probability that the outcome would have been different. In direct conflict with the social worker's statement that the younger boy "was very up front in some ways[,]" her notes stated that he would "report adults to various authorities, threatening to charge them with various forms of abuse, if he was not granted his every wish . . . ." Furthermore, her reports indicated the boy's need to be manipulative and in control, despite testifying that she would not use the word "deceptive" to characterize him. Clearly, the notes portray the boy in a different, if not contradictory, light than what her testimony indicated. In *Kyles*, the Court recognized that suppressed statements of eyewitnesses, riddled with inconsistencies, would have resulted in a weaker case for the prosecution and a stronger one for the defense, and they would have substantially reduced or destroyed the value of the testimony of the prosecution's two best witnesses. The same can be said of this case.

As to the older boy, his teachers had compiled reports stating that not only was he an "accomplished liar," but that he told lies "even when confronted with direct evidence of wrongdoing and will insist loudly that he didn't do anything." The majority finds conclusive the fact that during their testimony, the older boy's teachers "agreed that *all* the students at the facility had emotional problems, and *many* of them lied." *Ante* at 457 (emphasis added). Furthermore, the

majority finds that because the jury knew the older boy had a "troubled background," the evidence contained in the documents could not be taken to put the whole case in such a different light as to undermine the confidence in the verdict. I disagree. I fail to see how the jury's knowledge that the older boy had a "troubled background" would justify withholding such material information. Even a layperson would know that the older boy had a troubled background, as both the older boy and the younger boy were at a home for children with severe behavior problems. *Ante* at 451. Furthermore, knowing that "many" boys at the home lied is not the same as knowing that this particular boy had lied "even when confronted with direct evidence of wrongdoing and [would] insist loudly that he didn't do anything."

In *United States v Agurs*, 427 US 97, 112-113; 96 S Ct 2392; 49 L Ed 2d 342 (1976), the Court stated:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. *On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.* [Emphasis added.]

Clearly, this is a case in which the verdict was already of questionable validity. Over a year had gone by before anyone even questioned the young boy

about the incident. The only material witnesses were
the two boys. The additional evidence showed that
the very victim that claimed abuse by the defendant,
was also one who claimed abuse by other people just
to get his own way. Even though the trial judge stated
he would search the omitted evidence for evidence of
"false accusations against anyone," *ante* at 452, he did
not deem this type of false accusation *about abuse* to
be material in this *abuse* case. I find this to be error.

In sum, I fail to see how disclosing this information
to the jury would not create a reasonable probability
that the outcome would be different. This is espe-
cially so, where the "two boys were the main wit-
nesses for the prosecution."

> [T]he question is not whether the State would have had a
> case to go to the jury if it had disclosed the favorable evi-
> dence, but whether we can be confident that the jury's ver-
> dict would have been the same. Confidence that it would
> have been cannot survive a recap of the suppressed evi-
> dence and its significance for the prosecution. [*Id.* at 453.]

The majority states that the suppressed information
is not material because the younger boy admitted he
told lies and made false accusations, and the jury
knew of the older boy's "troubled background." This
type of harmless-error analysis is inappropriate
where, as here, the suppressed information is
material to the case. The United States Supreme
Court indicated in *Kyles* that once a reviewing court
has found a constitutional error, there is no need for
further harmless-error review. The information sup-
pressed by the government is clearly material (and
favorable) to the defense. There is no doubt in my
mind that there is at least a reasonable probability
that the jury's outcome would have been different if it

had known that the older boy vigorously insists that he hasn't lied when in fact he has, and the younger boy likes to fabricate stories of abuse if he is not given his every wish. After all, these two accomplished liars, and the one social worker who relied on what the boys told him, were the only material witnesses to the prosecution's case. This, coupled with the fact that the deposition testimony of the social worker from the other school contradicted her notes, demonstrates that there was a reasonable probability the outcome would have been different.

On the basis of the above facts and relevant constitutional review, I find that the circuit court committed error requiring reversal in holding that the suppressed information was not material to defendant's case. Therefore, I would affirm the decision of the Court of Appeals.

KELLY, J., concurred with CAVANAGH, J.