# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BILLIE ERNEST FULKERSON,

Defendant-Appellant.

UNPUBLISHED
December 26, 2017

No.  329887
Livingston Circuit Court
LC No.  15-022541-FC

Before:  MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration with person under 13 years of age), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with person under 13 years of age).  He was sentenced to concurrent terms of imprisonment of 20 to 40 years for each of the CSC-I convictions and 10 to 15 years for the CSC-II conviction. Defendant appeals as of right, and we affirm his convictions but vacate his sentences and remand for resentencing.

The jury convicted defendant of sexually abusing his granddaughter, beginning when she was about five or six years old; the victim was 15 years old at the time of trial.  The three counts of CSC-I were predicated on an act of digital-vaginal penetration, an act of penile-vaginal penetration, and an act of oral-vaginal penetration.  The CSC-II count was based on an act of genital touching.  On appeal, defendant first argues that there was insufficient evidence to support the CSC-I conviction involving penile-vaginal penetration and that trial counsel was ineffective by failing to move for a directed verdict on that particular count.  In support of his arguments, defendant accurately points to the victim's testimony wherein she indicated that, on one or two occasions, defendant attempted penile-vaginal penetration, but answered in the negative when asked, "Did it ever go in?"

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction.  *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002).  In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646

-1-

NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

For purposes of CSC-I, "sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). The jury was instructed consistent with this statutory provision. Although the victim testified as indicated above, she also stated that "it was uncomfortable and it hurt really bad" in relationship to the penile-vaginal contact. A reasonable and fairly strong inference arising from this testimony is that there was an intrusion of defendant's penis into the victim's genital opening. The feeling of pain almost necessarily suggests an intrusion and certainly at least a slight intrusion. The victim's testimony that defendant's penis did not go in does not necessarily correlate or equate to testimony that the statutory definition of "sexual penetration" was not satisfied. We can only speculate with respect to the young victim's conception of what constituted a genital intrusion. In sum, viewing the evidence in a light most favorable to the prosecution and resolving all conflicts in the evidence in favor of the prosecutor, we hold that there was sufficient evidence to sustain the guilty verdict on the charge of penile-vaginal penetration. Moreover, because a directed verdict on the charge would not have been appropriate, we reject defendant's claim that his attorney was ineffective for not moving for a directed verdict on the count. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) (counsel is not ineffective for failing to raise futile objections or motions).

Defendant next argues that the trial court, having conducted a *Ginther*[1] hearing, erred in concluding that trial counsel's decision to go to trial without the assistance of an expert on the reliability of children's allegations of criminal sexual conduct did not constitute deficient performance. Again, we disagree, although it presents a close call.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). And we will not "assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). We cannot insulate, however, the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*

The sole witness at the *Ginther* hearing was defendant's trial attorney, who testified that she was fully aware of research on the topic of sexual assault allegations made by children, including suggestibility and forensic interviewing matters, attributing her knowledge to "consulting with . . . experts in previous cases." Counsel agreed "[a]bsolutely" that an expert could assist a defense attorney in developing issues related to the reliability of testimony by a child CSC victim and that an expert witness could have assisted her in analyzing the reliability of the victim's accounts in the instant case.

Trial counsel testified that she had consulted with various experts in the past, had attended educational events related to forensic interviewing protocols, and had routinely consulted standard texts on the subject in her practice. Counsel acknowledged that the credibility or reliability of a witness can be affected by a history of abuse or neglect, delays in disclosing the pertinent information, and suggestive interviewing techniques, and counsel stated that she initially "thoroughly believed" that she needed an expert in this case. Counsel explained that she in fact contacted an expert, but delayed retaining the expert pending receipt of all discovery materials, and she then "was advised by jail administration that there were significant

medical issues as it related to [defendant]." According to trial counsel, defendant's medical condition "had declined steadily since the time he had been incarcerated." Counsel testified that she decided to go to trial without an expert, after consulting with defendant, who was born in 1934, out of concern that defendant needed quick resolution of the matter if he was to survive the litigation at all. Trial counsel explained that she thought she could succeed without an expert "through cross-examination," given her "knowledge of the forensic interviewing protocol."

Following the *Ginther* hearing, the trial court rejected defendant's argument that trial counsel was ineffective for failing to call an expert witness at trial, ruling as follows:

> Counsel in this case did investigate the possibility of an expert, and the type of testimony or evidence he or she could provide. Indeed, counsel . . . testified that she did in fact consult with the expert, Dr. Swerdlow-Freed by phone, contacting him, giving him a brief overview of the case, discussing the case, obtained a retained fee amount. Counsel even obtained the actual retainer agreement, obtained the expert's CV, and two articles written by him . . . the first one regarding interviewing children about allegations of sexual abuse. And the second article . . . was titled Juror Knowledge of Sexual Abuse and the Role of Expert Testimony and what it could provide for a juror's knowledge in assessing the reliability of children's eye witness testimony. Those . . . were admitted during that Ginther Hearing as Exhibits B and C. Accordingly, counsel's ultimate decision or strategy to proceed without an expert in September of 2015 was not the result of counsel's complete failure to employ reasonable professional judgment as counsel's judgment was not limited by a lack of knowledge of the existence of such testimony or the importance of that evidence. Indeed, counsel testified that she was well aware of and very familiar with the issues and aspects of the purported testimony and how it could have assisted with her case by way of an opinion an[d] explanations to the jury on the issues and defense theories. Including whether the forensic interview protocol was followed, the quality of weaknesses of that forensic interview or interviews. The delay in disclosure in this matter. [T]he possible taint to the disclosures due to the number of therapists that [the complainant] was involved with and the alleged nature of the relationship with one of those therapist[s]. And with this knowledge and prior experience counsel made the strategic decision to forego presenting this testimony . . . . Counsel testified that the defendant's health was declining to the point that both attorneys . . . were concerned that the defendant may not survive further incarceration and the delay caused by obtaining an expert. So in the face of delaying the trial further counsel and the defendant weighed the advantages and disadvantages of delaying the trial to obtain an expert. Counsel testified that she explained to the defendant the disadvantages and risks involved going to trial without an expert and ultimately the decision was made that the risks of the delay outweighed the potential benefits of the expert testimony. As part of that risk benefit analysis and very importantly counsel felt strongly that she could present and educate the jury regarding the issues in defense theories using other methods such as cross-examination and the presentation of other witnesses. Counsel testified that she was confident in her abilities and knowledge based on her experience that she could create enough reasonable doubt to obtain an acquittal.

-4-

Based on the record at the Ginther Hearing in this matter counsel['s] strategic choice appears reasonable based on an objective standard. . . . Counsel made a reasonable professional judgment after making reasonable investigation into what an expert could have provided . . . .

While we are sympathetic to trial counsel's predicament involving the elderly defendant and his seriously deteriorating health condition, as apparently greatly exacerbated by his incarceration, we are not prepared to find that those circumstances, *in and of themselves*, justified foregoing the presentation of an expert witness. Absent trial counsel's extensive experience, background, and knowledge regarding issues concerning potentially problematic aspects of claims and testimony by a child CSC victim bearing on credibility and reliability, we would be hard pressed not to find deficient performance in this case. However, when the circumstances that existed regarding defendant's health are considered in conjunction with trial counsel's considerable experience, background, and knowledge, allowing for strong cross-examination, we cannot conclude that the trial court erred in finding that trial counsel's performance was not deficient. Reversal is unwarranted.

Defendant next argues that the trial court erred in denying a defense request for disclosure or in-camera review of privileged records relating to a Child Protective Services investigation and the nature of communications made by complainant to her various therapists or counselors. Alternatively, defendant maintains that the trial court erred by failing to deem trial counsel ineffective for not offering an adequate foundation for such disclosure or review. We disagree.

Under *People v Stanaway*, 446 Mich 643, 649-650; 521 NW2d 557 (1994), the privileged reports and records sought by defendant would only be available for disclosure or in-camera review in order to protect his constitutional rights if he "demonstrated a good-faith belief, grounded in articulable fact, that there [was] a reasonable probability that the records contain[ed] material information necessary to his defense." A generalized claim of need for the records and reports predicated on the belief that they might contain impeachment evidence or potentially exculpatory evidence would constitute a fishing expedition precluding disclosure or review. *Id.* at 680-682. Here, defendant's basis for disclosure or review of the records and reports had been preliminary examination testimony that the victim had initially disclosed defendant's sexual abuse to a previous therapist. On this record, we agree with the trial court's conclusion that defendant had not satisfied the *Stanaway* criteria for disclosure or review, but had instead appeared to be on a fishing expedition. There was no abuse of discretion. *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998). To allow disclosure or in-camera review under the circumstances would be to justify such discovery "in every case involving an accusation of criminal sexual conduct." *Stanaway*, 446 Mich at 681.

Next, in asserting that trial counsel should have done more to establish a good-faith basis for disclosure or review of the records and reports, defendant points to various documents that could have been presented to the trial court that would have satisfied the *Stanaway* criteria. We conclude that, had trial counsel marshalled the documents described in his appellate brief, counsel still would not have shown a reasonable probability that the privileged records and reports contained material information necessary to his defense. Because defendant, in challenging the effectiveness of trial counsel on the matter, continues to argue for the sort of

fishing expedition disapproved of by our Supreme Court in *Stanaway*, trial counsel's disinclination to make that case before the trial court did not constitute deficient performance.

Finally, defendant contends that resentencing is required because of errors in the scoring of offense variable (OV) 7 and OV 11. In *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), this Court observed:

> Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred. On the other hand, we review de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute. When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. [Citations, quotation marks, ellipsis, and alteration brackets omitted.]

With respect to OV 7, the trial court assessed 50 points, which is the proper score when "[a] victim was treated with sadism, torture, or excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). At the sentencing hearing, and after some back and forth with the attorneys regarding OV 7, the trial court finally settled on assessing 50 points on the basis of sadism. Subsection (3) of MCL 777.37 defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." For purposes of scoring OV 7, a court can only take into consideration conduct that occurred during the sentencing offense, *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016), which in this case was one of the CSC-I offenses.

The trial court was certainly correct in its determination that defendant's conduct was inflicted for his personal gratification, but it also had to be shown that the conduct subjected the "victim to extreme or prolonged pain or humiliation." MCL 777.37(3). The trial court relied on information showing that the victim suffered and continues to suffer extreme and prolonged mental pain and humiliation as a result of being sexually abused by her grandfather. Thus, the trial court focused on the aftereffects of defendant's conduct and not on the conduct itself as it was being perpetrated. The actual act of committing CSC-I against the victim had to have involved subjecting the victim to extreme or prolonged pain or humiliation at the time, and while defendant's actions were plainly horrific and deplorable, the evidence failed to show that they rose to the level of being sadistic under the statutory definition. Accordingly, the trial court erred in assessing 50 points for OV 7 on the basis of sadism.

With respect to OV 11, MCL 777.41 (criminal sexual penetration), when the case was remanded, the parties agreed that OV 11 should have been scored at zero points, instead of the 50 points that had been assessed. And the trial court also agreed, but it indicated that it would have imposed the 20-year minimum sentence regardless of how OV 11 had been scored, noting that the 50-point reduction did not alter the OV level. The 20-year minimum sentence did reflect a departure from the sentencing guidelines. Considering the 50 points deducted from the total OV score in connection with OV 11, plus the 50 points that must now be deducted because of the

improper scoring of OV 7 based on sadism, defendant's total OV score decreases from 195 to 95 points, placing defendant at OV level V instead of the original OV level VI, thereby reducing the recommended range under the guidelines. See MCL 777.62. Because the minimum sentence range is altered, and because it is impossible for us to discern whether the trial court would have departed to the extent that it did under the lower guidelines range, we vacate defendant's sentences and remand for resentencing. *People v Francisco*, 474 Mich 82, 88, 89 nn 7 and 8; 711 NW2d 44 (2006). We do, however, have one caveat. The trial court will be permitted on remand, at its discretion and consistent with the dictates of *Thompson*, 314 Mich App 703, to reexamine OV 7 to determine whether 50 points should still be assessed on a basis found in MCL 777.37(1)(a) other than the sadism provision.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle