*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 11, 2024

Plaintiff-Appellee,

v

No. 365276
Wayne Circuit Court
LC No. 21-008455-01-FC

JOSEPH ROBERT CLARK,

Defendant-Appellant.

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, carrying a weapon with unlawful intent, MCL 750.226, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and three counts of carrying a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. He was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for the AWIGBH conviction, 10 to 20 years' imprisonment for the carrying a weapon with unlawful intent conviction, 10 to 20 years' imprisonment for the felon-in-possession conviction, and five years' imprisonment for each of the felony-firearm convictions. Defendant appeals as of right. We vacate in part the order denying defendant's motion for a new trial or an evidentiary hearing, and remand to the trial court for an evidentiary hearing limited to defendant's claim that trial counsel was ineffective for failing to investigate three witnesses.

## I. FACTS

This case arises out of an altercation at a family gathering on August 8, 2021, in Detroit, Michigan, which resulted in the shooting and injuring of Taijanai Salters.[1]  At trial, Taijanai

---

[1] Many of the individuals involved in the altercation share the same last name. For clarity, the first reference to each individual will include his or her first and last name and subsequent references will be by first name only.

testified that she went to a residence located at 2971 East Outer Drive in Detroit on August 8, 2021, to attend a family gathering. The residence belonged to Gwen Jones, who was the girlfriend of Taijanai's sister, Jadia Salters. Taijanai traveled to the residence with her younger brother, Laron Richardson, and his girlfriend. When they arrived, Taijanai saw a burgundy minivan belonging to her cousin, Sheaneen Coleman, parked in front of a neighbor's house. Jadia pulled into Gwen's driveway in a white Journey. As Jadia pulled into the driveway, Sheaneen's burgundy minivan pulled up to Gwen's house and the following passengers exited the minivan: Sheaneen; defendant, who is married to Sheaneen; Sheaneen's daughter, Brijanayy Coleman; Sheaneen's sister, Kanayy Byrd; and Janiyah Coleman, who is Sheaneen's and defendant's daughter. Taijanai's older brother Jaquayy, and sister Star, were also at the residence.

When defendant walked up to the residence, Taijanai saw the black handle of a gun in the waistband or pocket of defendant's pants. Several people started to argue over a prior dispute between Taijanai's cousin Kevin Byrd and Jaquayy. As Jadia began to back out of Gwen's driveway in her white Journey, Taijanai heard someone say, "Snatch her out of the car." Taijanai saw Kanayy open Jadia's car door and hit Jadia. Jadia's vehicle was still in reverse when Kanayy hit Jadia, and the vehicle ended up on the grass. Taijanai's brother[2] began fighting with Kanayy. Star tried to grab Kanayy. Brijanayy ran over to the altercation with a bat and hit Star on her head and shoulder with the bat. Taijanai tried to distance herself from the altercation because she was six months pregnant and did not want to get injured. Jadia drove across the neighbor's front lawn. Taijanai then observed Sheaneen driving her burgundy minivan over the curb. Defendant was standing on the grass near Sheaneen's minivan. Taijanai saw defendant look from left to right and then shoot her.

Taijanai testified that her right leg gave out and she fell to the ground after defendant shot her. Taijanai tried to get up but could not use her right leg. She saw a lot of blood on the ground. Star dragged Taijanai to the back of the house. Taijanai could not recall how many times defendant shot her but recalled hearing multiple gunshots from different kinds of guns. Police and emergency services arrived shortly after the shooting. Taijanai was taken by ambulance to Sinai-Grace Hospital where she received treatment for a gunshot wound and was released the same day. The bullet was not removed from Taijanai's leg.

Two videos depicting the altercation were admitted without objection as defendant's Exhibit 3 and defendant's Exhibit 4. Both videos were recorded by Janiyah, who recorded one continuous video and then split it into two parts. Defendant's Exhibit 3 depicts numerous individuals in the driveway of a residence, standing in a group and arguing. Defendant appears to be holding a black object in his left hand. Defendant and Taijanai's brother, depicted in multicolor jeans,[3] walk up the driveway toward the back of the residence while Taijanai, a woman holding a baby, and a small child remain on the driveway near the front porch. Taijanai's brother in multicolor jeans appears to be holding a long gun in his right hand. Defendant, Taijanai's brother in multicolor jeans, and another individual stand near the driver's side door of a white minivan at

---

[2] The record is unclear as to whether "brother" refers to Laron or Jaquayy.

[3] The record is unclear as to whether the brother depicted in multicolor jeans is Jaquayy or Laron.

the top of the driveway, which begins to slowly reverse out of the driveway. Defendant and Taijanai's brother walk down the driveway and toward the front porch. Taijanai's brother stands on the front porch and reaches into the front door of the house. Defendant follows Taijanai's brother onto the porch. The camera turns toward the street and the white minivan is depicted with its front tires on the sidewalk and its back tires on the grass strip between the sidewalk and the street in front of the residence. The camera pans down to the grass and then back up to the white minivan, which drives across the lawn of the residence and stops near the front porch. Janiyah yells, "Kanayy, pull that bitch out the car!" The camera approaches the driver's side of the white minivan, where a woman in a white T-shirt with her midriff exposed is seen reaching into the open driver's side door and attempting to pull Jadia out of the vehicle. Star begins hitting the woman with her midriff exposed from behind. Brijanayy hits Star from behind with what appears to be a baseball bat. Brijanayy falls backward and continues to physically fight with Star. Defendant appears to try to intervene and falls down. The camera pans back to the driver's side of the minivan, where Taijanai's brother is physically fighting with the woman with her midriff exposed. Defendant approaches the driver's side of the white minivan and appears to have something black sticking out of his pocket.

Defendant's Exhibit 4 is a continuation of defendant's Exhibit 3. It depicts the white minivan with its front tires on the sidewalk in front of the residence and its back tires on the grass strip between the sidewalk and the street. The white minivan drives across the lawn and driveway and onto the lawn of the neighboring residence. Someone screams, "Oh my god, she just hit my f***ing sister!" Brijanayy is seen sitting on the grass strip between the neighboring residence's front lawn and the street. Defendant runs over to Brijanayy. A burgundy minivan is depicted driving across the front lawn of the residence toward Brijanayy and defendant. The burgundy minivan approaches the woman with her midriff exposed, who is walking across the driveway, and a loud boom is heard. The camera pans up to show the burgundy minivan driving across the driveway. The windshield appears to be broken. The burgundy minivan turns toward the street and another loud boom is heard. As the burgundy minivan pulls into the street, four loud popping sounds are heard. Defendant is seen standing in the street in front of a neighboring house in the direction the burgundy minivan was traveling. Approximately eight more popping sounds are heard as Janiyah moves up the driveway toward the back of the residence. Approximately four more popping sounds are heard.

On cross-examination, Taijanai acknowledged that she told an investigator that she did not know if defendant was trying to shoot at her or why she was struck. Taijanai testified that she watched defendant shoot her and did not have any uncertainty as to the identity of her shooter. Taijanai acknowledged that her brother appeared to be holding a weapon in his hand in a still shot taken from one of the videos of the altercation. Taijanai denied that her brother shot her. She testified, "If my brother shot me or I didn't know who shot me, I would just say I didn't know who shot me."

Forensic Technician Felicia Jackson testified that she was dispatched to 2971 East Outer Drive on August 8, 2021, at approximately 3:45 p.m. Jackson took photographs of the scene and collected shell casings. She collected an unspecified number of 9 mm Luger shell casings on the grass near a vehicle. She also recovered 10 "7.62" casings in the driveway toward the back of the house. She testified that the 7.62 casings came from a large assault-type rifle. She also observed and photographed a broken window on the west side of the residence. She did not know whether

the damage to the window was old or new, nor did she know how the window was broken. She recovered four or five shell casings in the driveway near the broken window.

Detective Yvette Garcia testified that she was the officer in charge of the investigation. She observed six 9 mm shell casings and an unspecified number of 7.62 shell casings on the ground at the scene. The 9 mm shell casings were located in the area where Taijanai said defendant was standing when he shot her, and Detective Garcia concluded from the location of the 9 mm shell casings that the person firing the gun was actively moving while firing. She testified that she has observed injuries from both 9 mm shell casings and 7.62 shell casings in her line of work. She testified that a 9 mm is a smaller caliber round and can get stuck in a person's body, while a 7.62 caliber round causes significant trauma to a person's body because a 7.62 caliber round can explode once it enters the body. She determined that defendant shot Taijanai because the 7.62 shell casings were leading up the driveway "almost side by side to the small drops of blood that were consistent with [Taijanai's] injuries" and, in Detective Garcia's experience, injuries from a 7.62 caliber round would have resulted in very heavy bleeding. She further testified that she observed Taijanai's injury, and it was not consistent with a 7.62 caliber round.

Detective Garcia attempted to interview Laron at the hospital, but Laron left the hospital so she was unable to interview him. She did not interview Jaquayy because she did not have contact information for him. She attempted to get contact information for Jaquayy from Taijanai but Taijanai told her that "there was not much involvement with Jaquayy" with respect to the shooting. Detective Garcia acknowledged on cross-examination that Jaquayy's involvement was greater than was described by Taijanai. No one told Detective Garcia that Jaquayy had a gun with him during the altercation. Detective Garcia acknowledged that Taijanai's brother[4] appeared to be holding a long gun in a still shot taken from the videos of the altercation, and that some guns of that type fire 7.62 caliber rounds. Detective Garcia testified that Taijanai was not forthcoming with respect to who fired shots besides defendant, and the other witnesses were not forthcoming as to who was armed besides defendant. No guns were ultimately recovered in this case.

Defendant called Janiyah as a witness. Janiyah testified that defendant is her father. She was with defendant, her mother, her sister, her aunt, and her uncle at the residence on East Outer Drive on August 8, 2021. Taijanai, Jaquayy, Laron, Jadia, Star, and numerous children were also present at the residence. Janiyah began recording a video on her phone when she first walked up to the residence because she saw that Jaquayy had a gun, and she anticipated that something was going to happen. After Janiyah arrived, Taijanai and Sheaneen got into a verbal dispute over Facebook posts. Janiyah saw Jadia pull out of the driveway. She also saw Brijanayy hit Star with a baseball bat. Janiyah testified that she saw Brijanayy get hit by a vehicle and saw defendant go to her sister's aid. When Janiyah first heard a gunshot, defendant was helping her sister to Janiyah's right, and the gunshots came from Janiyah's left. When the shots stopped, Janiyah ran to the corner of the street to get into Sheaneen's vehicle. Defendant, Sheaneen, Brijanayy, and Kanayy were already in the vehicle. They brought Janiyah's sister to the emergency room at Sinai-Grace Hospital because she was run over by a vehicle. Janiyah testified that defendant had a black cell phone at the time of the altercation.

---

[4] The record is unclear as to whether "brother" refers to Laron or Jaquayy.

During closing arguments, the prosecution argued, in relevant part, that defendant was standing where the 9 mm shell casings were recovered when he shot in the direction of the house, hitting and breaking one of the residence's windows. Trial counsel argued that the prosecution did not present any evidence that defendant had a gun with him when the altercation occurred. Trial counsel argued that when the gunshots started, defendant was giving aid to his daughter, who had just been run over by a car. In rebuttal, the prosecution argued that Taijanai's injury and the damage to the side of the house evidenced that someone was shooting in the direction of the house. The jury found defendant guilty of AWIGBH, carrying a firearm with unlawful intent, felon-in-possession, and three counts of felony-firearm, and defendant was sentenced as described earlier.

On June 12, 2023, defendant moved for new trial or an evidentiary hearing on ineffective assistance of counsel. Defendant argued that trial counsel provided ineffective assistance by: (1) failing to interview or call as trial witnesses Sheaneen, Brijanayy, and Kanayy; (2) failing to request funds for a ballistics or audio expert witness, or both, (3) failing to object to the prosecution arguing facts not in evidence during closing argument; and (4) failing to admit evidence of defendant's lack of violent criminal history. Defendant attached to his motion affidavits from Brijanayy, Sheaneen, and Kanayy. In Brijanayy's affidavit, Brijanayy avers that the only person she saw with a gun on August 8, 2021, was Jaquayy. She further avers that defendant came to her aid after she was hit by Jadia's car. When they heard gunshots, defendant picked Brijanayy up, and they ran down the street to Sheaneen's vehicle. She avers that she was never contacted by trial counsel. In Sheaneen's affidavit, Sheaneen avers that she was present at the altercation on August 8, 2021, and heard gunshots while defendant was attending to Brijanayy after Brijanayy was hit by Jadia's vehicle. She further avers that she observed Jaquayy with a long gun and Laron with a pistol. She avers that she saw Laron shoot at her vehicle through her rear-view mirror and drove onto the grass to avoid the shots. Finally, she avers that she spoke with trial counsel but they did not discuss Sheaneen testifying, nor did trial counsel ask Sheaneen what she witnessed. In Kanayy's affidavit, Kanayy avers that she was present at the altercation on August 8, 2021, and saw Jaquayy with a long gun and Laron with a gun. She avers that "he" started shooting at her and her friends, but does not specify whether "he" refers to Jaquayy or Laron. She further avers that when she heard gunshots, she turned around and saw Jaquayy pointing his rifle at Brijanayy's car.[5] Defendant was with Brijanayy when Kanayy heard the gunshots. Kanayy avers that she was never contacted by trial counsel. In support of his argument that trial counsel was ineffective for failing to object to the prosecution's argument that the window was broken during the shooting, defendant attached a police interview statement regarding an interview conducted with Gwen on August 8, 2021. The interview statement indicates that Gwen "received a text from Danayy [sic] about getting [Gwen's] window fixed that they busted out."

The trial court denied defendant's motion for a new trial or evidentiary hearing on the issue of ineffective assistance of counsel without hearing oral argument or conducting an evidentiary hearing. With respect to trial counsel's failure to call Sheaneen, Brijanayy, and Kanayy, the trial court found that defendant was not deprived of a substantial defense and was not entitled to relief on this basis. The trial court found that any testimony offered by those witnesses would have been

---

[5] The reference in the affidavit to Brijanayy's car appears to be a typographical error because the testimony at trial established that Brijanayy arrived in Sheaneen's vehicle.

cumulative in nature because Janiyah testified that Jaquayy had a gun at the altercation and that defendant was tending to his daughter when the gunshots started. The trial court also found that "[i]t may have been trial strategy not to call affiants as witnesses because of the roles they played in the dispute." The trial court found that defendant was not entitled to relief on the basis of trial counsel's failure to secure an expert in ballistics or audio because defendant failed to offer proof of what testimony the experts would have offered or how they would have helped the jury reach an acquittal. Further, defendant asserted that he was not armed, so expert testimony differentiating between the types of guns heard in the videos admitted at trial would be unnecessary. The trial court characterized defendant's argument regarding trial counsel's failure to object to the prosecution arguing facts not in evidence as "failing to move to exclude evidence of a broken window that was part of Felicia Jackson's testimony." The trial court found that it was unclear how Jackson's testimony hurt defendant, and the jury was instructed that closing arguments are not evidence. The trial court found that trial counsel's decision not to offer evidence of defendant's lack of violent criminal history since April 2002 could be considered trial strategy because defendant pleaded no contest to AWIGBH on January 13, 2023, and the nonviolent offenses for which defendant was convicted since April 2002 "do not promote an impression of good character." Defendant now appeals as of right.

## II. INEFFECTIVE ASSISTANCE

Defendant first argues that the trial court abused its discretion by denying his motion for a new trial or an evidentiary hearing because trial counsel provided ineffective assistance by failing to interview or call as trial witnesses Sheaneen, Brijanayy, and Kanayy. We agree.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). This Court reviews the trial court's findings of fact for clear error and reviews de novo questions of constitutional law. *Id*. When, as here, the trial court did not conduct an evidentiary hearing, "this Court reviews de novo the entire record to determine whether the defendant's trial counsel's representation constituted the ineffective assistance of counsel." *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). This Court's review is limited to errors apparent from the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

This Court reviews a trial court's decision to grant or deny a new trial for an abuse of discretion. *People v Muniz*, 343 Mich App 437, 441; 997 NW2d 325 (2022). This Court also reviews for an abuse of discretion a trial court's decision whether to hold an evidentiary hearing. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). A trial court abuses its discretion when its decision falls outside of the range of reasonable and principled outcomes. *Muniz*, 343 Mich App at 441. Further, "[a] trial court necessarily abuses its discretion when it makes an error of law." *Franklin*, 500 Mich at 100 (quotation marks and citation omitted). A trial court should grant an evidentiary hearing if the defendant "set[s] forth . . . facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Under both the Michigan and United States Constitutions, criminal defendants have a right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466

US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Abcumby-Blair*, 335 Mich App at 228 (quotation marks and citation omitted).

"There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). To establish that counsel's performance was deficient, a defendant must establish that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *Id*. (quotation marks and citation omitted). "This Court will not substitute its judgment for that of counsel on matters of trial strategy, nor will this Court use the benefit of hindsight when assessing counsel's competence." *Id*. (cleaned up). A defendant asserting a claim of ineffective assistance of counsel bears the burden of establishing counsel's deficient performance and the resulting prejudice, and "necessarily bears the burden of establishing the factual predicate for his claim." *Id*. (quotation marks and citation omitted).

Trial counsel's decisions regarding whether to interview or call a witness "are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. Thus, this Court must initially determine "whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgment supports the limitations on investigation." *Trakhtenberg*, 493 Mich at 52 (cleaned up).

In this case, defendant has set forth facts that require development of the record to determine whether trial counsel provided ineffective assistance by failing to conduct a reasonable investigation into witnesses Sheaneen, Brijanayy, and Kanayy. The defense asserted at trial was that defendant was not armed on August 8, 2021, and that Taijanai was shot by her brother. Because the trial court did not conduct an evidentiary hearing, the only record evidence of trial counsel's investigation into Brijanayy, Sheaneen, and Kanayy as potential witnesses are the affidavits attached to defendant's motion for a new trial. Brijanayy and Kanayy averred that they were never contacted by trial counsel regarding testifying at trial. Sheaneen averred that she spoke with trial counsel but they did not discuss Sheaneen testifying, nor did trial counsel ask her what she witnessed. Trial counsel stated during opening statement that defendant was with "his wife [Sheaneen], his two daughters [Brijanayy and Janiyah], and his wife's sister [Kanayy]" when the altercation occurred, which evidences that trial counsel was aware that these individuals were potential witnesses to the events in question. Moreover, a motion to exclude witness testimony filed by defendant's former counsel asserted that "[defendant] was on the ground tending to his daughter" when the gunshots are heard in the video recorded by Janiyah. Trial counsel had contact information for Sheaneen, at the very least, because he allegedly spoke with her prior to trial. Presumably, trial counsel could have obtained contact information for Brijanayy and Kanayy in the same manner that he obtained contact information for Janiyah. Thus, the record suggests that

-7-

trial counsel knew that these individuals witnessed at least some portion of the relevant events on August 8, 2021, but did not interview the witnesses regarding what they observed.

Further, the affidavits from the witnesses demonstrate that their testimony would have supported the defense theory asserted at trial, which was largely unsupported by record evidence. Trial counsel argued that defendant did not have or use a gun during the altercation. Brijanayy averred that she did not see a gun on anyone with whom she arrived at the residence, including defendant. Brijanayy further averred that defendant came to her aid after she was hit by the vehicle and, when they heard gunshots, defendant picked her up and they ran down the street to Sheaneen's vehicle. Trial counsel also argued that one of Taijanai's brothers shot her accidentally. Sheaneen averred that she saw Jaquayy with a long gun and Laron with a pistol, and that she saw Laron shoot at her vehicle in her rear-view mirror. Kanayy averred that she saw Jaquayy with a long gun and Laron with a gun, and that either Jaquayy or Laron started shooting at Kanayy and her friends as they ran away. She further averred that when she heard gunshots, she turned and saw Jaquayy pointing a rifle. In light of the fact that the only evidence introduced at trial putting a gun in defendant's hand was Taijanai's testimony and the video depicting an unidentifiable black object in defendant's hand, Brijanayy's testimony that defendant was with her when she heard gunshots and that defendant did not have a gun, coupled with the testimony of Sheaneen and Kanayy, that they witnessed Jaquayy and Laron firing guns during the altercation, would have been helpful for the defense. Further, the testimony of Sheaneen and Kanayy, that both Jaquayy and Laron were shooting during the altercation, provides an explanation for the police recovering two different kinds of shell casings at the scene.

The prosecution argues, and the trial court found, that the testimony at issue here would have been cumulative because Janiyah testified that defendant was tending to his daughter's injuries when the gunshots were fired. We disagree. The affidavits supplied by defendant indicate that Sheaneen, Brijanayy, and Kanayy would have provided testimony that was central to the defense theory of the case and was not cumulative. It is true that Janiyah testified that she saw Jaquayy with a gun, but no evidence was presented at trial regarding the other averments of the affiants. Moreover, given the chaotic nature of the events on August 8, 2021, the different perspectives from which the witnesses observed the events on that date could have provided valuable testimony as to events not observed by Taijanai, who denied seeing her brother with a gun, and Janiyah.

This case was largely a credibility contest. Trial counsel did not present any evidence at trial to counter Taijanai's testimony that defendant had a gun, nor did trial counsel present any evidence that Laron and Jaquayy were actively shooting during the altercation, despite the fact that the defense theory asserted at trial was that defendant did not have a gun and that Taijanai was shot by her brother. The only evidence at trial placing a gun in defendant's hand was the testimony of Taijanai and the video in which defendant is depicted holding a black object in his hand, though the video is not conclusive as to what that object is. Trial counsel presented evidence that Jaquayy had a rifle but did not present any evidence that Laron also was armed. In this regard, the testimony of Sheaneen and Kanayy provides a plausible explanation for the presence of two different types of shell casings at the scene. Given Taijanai's testimony that she would not have identified her brother as her shooter if he was the one to shoot her, the testimony of these other witnesses identifying Taijanai's brothers as the individuals shooting during the altercation would have significantly undermined Taijanai's credibility. Thus, the testimony of Sheaneen, Brijanayy, and

Kanayy was not cumulative and would have provided valuable evidence for the defense theory asserted at trial, which was largely unsupported by record evidence.

With respect to trial counsel's decision not to call Sheaneen, Brijanayy, and Kanayy as trial witnesses, the trial court found that "[t]here was testimony that the affiants were physically fighting with other party goers" and "[i]t may have been trial strategy not to call affiants as witnesses because of the roles they played in the dispute." We disagree. "[A] sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment." *Trakhtenberg*, 493 Mich at 55. The record evidence suggests that trial counsel did not interview Sheaneen, Brijanayy, or Kanayy regarding what they witnessed. No evidence was presented at trial that Sheaneen physically fought with anyone during the altercation. Though evidence was presented that Brijanayy and Kanayy were physically fighting with other people at the residence, it is unclear how this fact alone justifies trial counsel's failure to investigate what they witnessed to make a reasonable strategic decision to forgo their testimony due to their involvement in the altercation. Without interviewing these three witnesses to determine what they witnessed, trial counsel could not have exercised reasonable professional judgment about whether their roles in the altercation outweighed the value of their testimony when this case was, essentially, a credibility contest. Because defendant has set forth facts that suggest that trial counsel failed to investigate these witnesses, development of the record is required to determine if trial counsel provided ineffective assistance in this regard. See *Williams*, 275 Mich App at 200. Thus, the trial court abused its discretion by denying defendant's request for an evidentiary hearing in regard to this claim only.

Defendant next argues that the trial court abused its discretion by denying his motion for a new trial or an evidentiary hearing because trial counsel provided ineffective assistance by failing to secure a ballistics expert or an audio expert. We disagree.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "Defense counsel's failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). However, to establish ineffective assistance on this basis, a defendant must show that an "expert witness would have been able to offer favorable testimony." *Id*. at 703.

Defendant has not established that trial counsel provided ineffective assistance by failing to secure a ballistics expert or an audio expert. Defendant argues that "expert testimony was essential" because the police undertook little investigation regarding the bullet casings recovered from the scene but does not articulate what testimony an expert in either ballistics or audio would offer. Defendant appears to rely on statements made by his former trial counsel and the trial court during a pretrial hearing to establish that expert testimony was necessary to the case. However, the statements made during the pretrial motion hearing do not establish what testimony, if any, an expert would provide at trial, nor do the statements establish that the expert testimony would be favorable to defendant. A defendant cannot establish a claim of ineffective assistance of counsel merely by speculating that an expert witness could have provided favorable testimony. *Payne*, 285 Mich App at 190. Further, because the defense theory at trial was that defendant did not have a gun during the altercation, it is unclear how testimony from a ballistics or audio expert could have benefited defendant. Defendant has failed to establish that an expert witness would have

been able to offer favorable testimony at trial and, thus, has failed to establish that he was prejudiced by trial counsel's failure to secure a ballistics or audio expert. Because defendant did not establish that counsel was ineffective in this regard, defendant cannot establish that the trial court's decision to deny the motion for new trial or an evidentiary hearing with respect to this claim fell outside of the range of reasonable and principled outcomes. Therefore, defendant has not established that the trial court abused its discretion by denying his motion.

Defendant next argues that the trial court abused its discretion by denying his motion for a new trial or an evidentiary hearing because trial counsel provided ineffective assistance by failing to object to the prosecution arguing that the broken window was evidence that defendant shot Taijanai. We disagree.

"A prosecutor may not make a factual statement to the jury that is not supported by the evidence[.]" *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). However, the prosecution "has wide latitude and may argue the evidence and all reasonable inferences from it" and "need not confine argument to the blandest of possible terms . . . ." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (quotation marks and citation omitted).

Defendant has not established that trial counsel provided ineffective assistance by failing to object to the prosecution's argument that the broken window was evidence that defendant shot Taijanai. As an initial matter, defendant's argument, that the prosecution and trial counsel knew or should have known that the window was broken before the altercation on August 8, 2021, is unpersuasive. In support of this argument, defendant relies on a police interview statement regarding an interview conducted with Gwen Jones on August 8, 2021, which indicates that Gwen received a text from "Danayy" [sic] on August 8, 2021, about fixing a window belonging to Gwen that "they" had broken. The statement does not identify the location of the broken window or whether the broken window referenced therein is the same window Jackson photographed and referenced in her testimony. Therefore, the police interview statement is inconclusive as to whether the broken window observed by Jackson was broken prior to the altercation on August 8, 2021.

Jackson testified that she observed and photographed a broken window on the west side of the residence, and she recovered four or five shell casings in the driveway near the broken window. She further testified that she did not know how or when the window was broken, but it is common to find broken windows at the scene of a nonfatal shooting. The prosecution's argument, that the broken window was evidence that defendant shot in the direction of the house, striking Taijanai, was a reasonable inference from Jackson's testimony. An objection to the prosecution's argument would, therefore, be meritless, and "trial counsel is not ineffective when failing to make objections that are lacking in merit." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

Further, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence." Jurors are presumed to follow their instructions. *Id*. Thus, defendant has not overcome the strong presumption that trial counsel's failure to object was trial strategy, nor has defendant established that, but for trial counsel's failure to object to the prosecution's argument, there is a reasonable probability that the outcome of the proceeding would have been different. *Id*. at 58-59. Because defendant did not establish that counsel was ineffective in this regard, defendant cannot establish that the trial court's decision to deny the motion for new trial or an evidentiary

hearing with respect to this claim fell outside of the range of reasonable and principled outcomes. Therefore, defendant has not established that the trial court abused its discretion in denying his motion on this basis.

Finally, defendant argues that the trial court abused its discretion by denying his motion for a new trial or an evidentiary hearing because trial counsel provided ineffective assistance by failing to offer evidence of his lack of violent criminal history since April 2002. We disagree.

Under MRE 404(a)(1),[6] a criminal defendant "has a right to introduce evidence of his character to prove that he could not have committed the crime." *People v Zitka*, 335 Mich App 324, 342; 966 NW2d 786 (2021) (quotation marks and citation omitted). "But once a defendant chooses to present evidence of his or her character, the prosecutor may also present evidence concerning that same character trait to rebut the defendant's evidence." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009).

Defendant has not established that trial counsel provided ineffective assistance by failing to offer evidence of his lack of violent criminal history since April 2002. Defendant argues that he has not been convicted of any offenses involving a gun since April 12, 2002, and the benefit of this evidence would have outweighed any harm attributable to the prosecution introducing evidence of his other convictions. This is unpersuasive. As the prosecution argues on appeal, had trial counsel introduced evidence of defendant's purported lack of violent criminal history, the prosecution would have been entitled to introduce evidence of specific instances of defendant's conduct—in particular, that defendant had previously pleaded guilty to attempted carrying a concealed weapon, felonious assault, and felony-firearm, and that defendant was on bond for AWIGBH when the instant offenses occurred and pleaded no contest to that AWIGBH charge on January 13, 2023. Defendant has not overcome the strong presumption that trial counsel's decision not to introduce evidence of his purported lack of violent criminal history was sound trial strategy and, therefore, has not established that trial counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that the outcome would have been different had trial counsel introduced this evidence. Thus, the trial court did not abuse its discretion by denying defendant's motion for new trial or an evidentiary hearing on this basis.

### III. TETHER

In a supplemental brief, defendant argues that the trial court erred by allowing the prosecution to present testimony indicating that he had cut his tether after the arrest warrant was issued in this case.[7] Defendant contends that admission of this testimony violated MRE 401, 403, and 404(b). We disagree.

---

[6] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. This opinion relies on the version of MRE 404(a)(1) in effect at the time of trial.

[7] Defendant was subject to the tether for an unrelated offense.

-11-

We review a trial court's evidentiary rulings for an abuse of discretion. *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998).

Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[8] Here, the testimony from Edward Jean, a former Wayne County Sheriff, showed that on August 25, 2021, a tether that was supposed to be attached to defendant was found on a front porch unattached to his body. From this testimony, the jury could infer that defendant deliberately removed the tether after the shooting so his whereabouts would be unknown by law enforcement. We have repeatedly recognized that "evidence of flight is admissible to support an inference of consciousness of guilt . . . ." *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (cleaned up). Thus, the testimony was relevant to show that defendant attempted to flee from apprehension, and the jury could infer his consciousness of guilt in the instant shooting.

MRE 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial if it presents a danger that the jury would give undue or preemptive weight to marginally probative evidence." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009). As explained, the testimony was relevant to show consciousness of guilt. Moreover, the trial court, when ruling on trial counsel's objection on the matter, limited the scope of Jean's testimony by precluding him from testifying about why defendant was required to be on a tether at the time. This alleviated the risk of unfair prejudice by preventing the jury from learning about the details of defendant's other criminal conduct. In addition, because the parties stipulated that defendant previously had been convicted of a felony, the jury already was aware that he had a criminal record. Thus, knowledge that defendant was required to be on a tether for an unspecified reason could not have substantially prejudiced him beyond any prejudice that occurred through the stipulation. Consequently, admission of the testimony did not violate MRE 403.

Finally, MRE 404(b)(1) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . . ." "Evidence is inadmissible under this rule only if it is relevant solely to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) (emphasis omitted). Here, as explained, the testimony was relevant to show consciousness of guilt. In addition, there was no testimony about any specific criminal acts. Further, the "propensity" inference forbidden by MRE 404(b) is of questionable applicability to this issue, as the prosecution was not arguing that defendant had a propensity to flee when accused of crimes. Instead, the prosecution simply was arguing that defendant fled from apprehension for this particular criminal activity. For these reasons, admission of Jean's testimony did not violate MRE 404(b).

---

[8] As noted earlier, we use the version of the Michigan Rules of Evidence that was in effect at the time of trial.

Accordingly, the trial court did not abuse its discretion by allowing admission of Jean's testimony subject to the limitations that it imposed when ruling on trial counsel's objection.

## IV.  CONCLUSION

We vacate in part the order denying defendant's motion for a new trial or an evidentiary hearing, and remand to the trial court for an evidentiary hearing limited to defendant's claim that trial counsel was ineffective for failing to investigate three witnesses.  We retain jurisdiction.


/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica

-13-

# Court of Appeals, State of Michigan

## ORDER

PEOPLE OF MI v JOSEPH ROBERT CLARK

Docket No. 365276

LC No. 21-008455-01-FC

Kristina Robinson Garrett
Presiding Judge

Michael J. Riordan

Anica Letica
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, this case is remanded to the trial court for an evidentiary hearing limited to defendant's claim that trial counsel was ineffective for failing to investigate three witnesses. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 11, 2024
Date

_____
Chief Clerk