*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MARSHALL C. GREAR,

      Defendant-Appellant.

UNPUBLISHED
December 15, 2025
2:47 PM

No. 367972
Genesee Circuit Court
LC No. 2021-048473-FC

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables). Defendant was sentenced to 15 to 50 years' imprisonment for each CSC-I conviction.[1] We affirm defendant's convictions and his sentence in part, but partially vacate the ordered restitution.

## I. BACKGROUND

This case arises from allegations that defendant sexually assaulted the victim, who is his adopted daughter and biological granddaughter, over 100 times between January 1, 2005 and May 31, 2018. The incidents started when the victim was about 12 years old and was still living with her mother. When the victim was about 14 years old, defendant and his wife, Voncille Grear, became the victim's legal guardians purportedly because the victim's mother was in an abusive relationship. The victim then moved in with defendant and Voncille in their Flint, Michigan home. The couple legally adopted the victim when she was about 15 years old. The victim continued to live with defendant and Voncille until she was 23 years old.

---

[1] The trial court originally sentenced defendant so that the sentence for his first CSC-I conviction would run consecutive to the remaining sentences, but it later amended the judgment of sentence to provide that all sentences would run concurrently.

According to the victim, defendant sexually assaulted her at every opportunity. She testified that the assaults included instances of oral, vaginal, and anal sexual intercourse, and that defendant choked her on two occasions. Various individuals testified that defendant kept close watch on the victim, and the victim testified about instances in which defendant came to her school and her workplace, and said that he tracked the victim's cell phone location and required her to tell him whenever she went anywhere. The victim further testified that defendant manipulated her mother into putting the victim on birth control starting in her adolescence, despite the fact that the victim was not sexually active at the time other than the forced encounters with defendant. The victim said that she did not disclose the sexual assaults to anyone for many years because she was afraid of defendant.

When the victim was 23 years old, she asked her extended family for help moving out of defendant's home, and they made plans for her to move in with her relatives in another state. The victim did not disclose defendant's abuse at that time, but her relatives were concerned about her well-being because of certain remarks she made about wanting to leave defendant's home. In the summer of 2018, the victim's brother picked up the victim from defendant's home and took her to another relative's home in Michigan as temporary housing. The victim testified that, during her departure, she was in fight-or-flight mode and only took one suitcase of clothes, leaving behind furniture, more clothes, and a vehicle. The victim later moved in with her relatives in another state. Once there, the victim disclosed the abuse for the first time, leading to the charges against defendant in this case. The victim still attends therapy because of her experiences but denied at trial that she had any preexisting mental-health conditions.

Following a five-day trial, defendant was convicted and sentenced as stated earlier. In addition to the imposed sentence, the court ordered defendant to pay the victim $8,462.80 in restitution as a condition of parole. Part of the restitution included compensation for the victim's vehicle, which was never returned to her. This appeal followed.

## II. PRIVILEGED RECORDS

Before trial, defendant twice moved for *in camera* review and disclosure of the victim's medical and therapy records, relying on MCR 6.201(C) and *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). The trial court denied these motions, and defendant argues on appeal that the court deprived him of due process and abused its discretion by doing so. We disagree.

"A trial court's decision to conduct or deny an in camera review of records in a criminal prosecution is reviewed for an abuse of discretion." *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (quotation marks and citation omitted). We review constitutional issues de novo. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018).

Criminal defendants do not have a right to discover privileged records upon request. *Davis-Christian*, 316 Mich App at 207. Instead, "certain special procedures" are in place that, if followed, may grant a criminal defendant access to privileged records. *Id*. at 208. MCR 6.201(C)(2) outlines these procedures, stating in relevant part:

If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

(a) If the privilege is absolute, and the privilege holder refuses to waive the privilege to permit an in camera inspection, the trial court shall suppress or strike the privilege holder's testimony.

(b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony.

The Michigan Supreme Court amended MCR 6.201(C) to outline the *in camera* review process following its decision in *Stanaway*. See *People v Fink*, 456 Mich 449, 455 n 7; 574 NW2d 28 (1998). In *Stanaway*, the Michigan Supreme Court held that

in an appropriate case there should be available the option of an in camera inspection by the trial judge of the privileged record on a showing that the defendant has a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense. [*Stanaway*, 446 Mich at 677.]

There is no dispute that the victim's medical and therapeutic records are privileged or that the procedure outlined in MCR 6.201(C) governs this case. The key issue for purposes of this appeal is whether defendant articulated a good-faith belief, grounded in articulable fact, of a reasonable probability that the requested records were likely to contain material information necessary to his defense. We conclude that defendant failed to meet this standard.

In his second motion for therapy and medical records, defendant requested that the court conduct an *in camera* review of the records of Dr. Mustafa Akpinar and Dr. Veena Karla, both of whom allegedly provided birth-control treatment to the victim around the time that, according to the victim, the sexual assaults began (when she was about 12 years old). Defendant also sought *in camera* review of the victim's therapy records for a 13-year period spanning from 2005 through 2018, with emphasis on the earlier and later time frames. Defendant contended that he had a good-faith belief that these records would show that the victim did not disclose defendant's abuse to her providers at any point before 2018 because the providers were mandatory reporters under MCL 722.623, and the providers never reported that the victim was being abused.

This argument presents a good-faith belief grounded in demonstrable fact that the records likely contain what defendant claims they do. The problem for defendant is that the information he sought in these records—that the victim did not disclose defendant's abuse to her providers before 2018—was not material to his defense. This was a delayed-disclosure case, and the victim admitted that she never disclosed defendant's abuse until 2018. Defendant did not need the victim's privileged records to establish this fact or to cross-examine the victim about it. Because

the information that defendant sought in the privileged records was already available to him, it was not material to his defense. See *Davis-Christian*, 316 Mich App at 213 (explaining that, so long as the defendant has access to the same information that would have been in the privileged records, "any information in those records would not be material to his defense").

Defendant never identified any other information that may have been in the victim's therapy records that could be material to his defense,[2] but he claims that the victim's records from Dr. Akinpar and Dr. Karla would likely show whether the victim was sexually active when she was prescribed birth control and why she needed such a prescription. But defendant failed to ground his belief that the records contain this information in a demonstrable fact, and otherwise failed to explain why this information was material to his defense.

During the hearing on defendant's second motion for therapy and medical records, his counsel stated, in relevant part: "*I would assume*, when a person of that age goes in for those kinds of pre—birth control options, they're possibly examined to see if they're sexually active. *I would assume* that they're questioned and that there will be records." (Emphasis added.) Clearly, assumptions about what may have occurred at the victim's medical appointments that would cause the sought-after information to be in the records does not meet the standard of having "a good-faith belief, grounded on some demonstrable fact," that the records contain the information sought. *Id*. And defendant's argument on appeal is not much better—he simply asserts that the information he seeks is in the privileged records, thus still failing to ground his belief about the privileged records' contents in some demonstrable fact.

But even if defendant had identified a demonstrable fact to ground his belief that the victim's medical records contained information about whether the victim was sexually active and why she was prescribed birth control, defendant's request would still fail because he never explained why this information was material to his defense. It is not this Court's role to fill in the gaps in defendant's argument or speculate as to why the information that defendant sought was or could have been material information necessary to his defense. Defendant had to explain the basis of his request, and he simply failed to do so.[3]

---

[2] Defendant only made "generalized assertions" that the victim's therapy records may contain relevant information, which suggests that he was " 'on a fishing expedition to see what may turn up.' " *Davis-Christian*, 316 Mich App at 208, quoting *Stanaway*, 446 Mich at 680. Disclosure of privileged records "should not occur" in such circumstances. *Stanaway*, 446 Mich at 680.

[3] Like with the victim's therapy records, defendant also generally asserts that the victim's medical records likely contained relevant information, but, again, such general assertions do not warrant disclosure of the privileged records. See *Davis-Christian*, 316 Mich App at 208; *Stanaway*, 446 Mich at 680.

-4-

For these reasons, the trial court properly denied defendant's motion for *in camera* review of the victim's privileged records.[4]

## III.  RIGHT TO RECROSS-EXAMINATION

Defendant next argues that the trial court deprived him of his right to confront the witnesses against him when it denied his request to recross-examine Flint Township Police Detective Tanner Beckwith.  We disagree.

To preserve an issue for appeal, a criminal defendant must raise an objection and identify the claimed error at a time when the trial court can correct the error.  *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006).  Only the issues that the defendant identifies as the basis for his objection are preserved for appeal.  See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004) ("An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground.").  Defendant argues that he preserved his right-to-confrontation argument when he requested to recross-examine Detective Beckwith and the court denied the request.  But after the court denied defendant's request, defendant did not object, and more importantly, he never raised an argument related to the Confrontation Clause.  This issue is therefore unpreserved.  We review unpreserved issues for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The right to cross-examination is a right incorporated within the right to confront witnesses, as outlined in the Confrontation Clause of the Sixth Amendment to the United States Constitution and as recognized in the Michigan Constitution.  US Const, Am VI; Const 1963, art 1, § 20.  See also *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993).  "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation."  *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).  But the right to confront and cross-examine "does not include a right to cross-examine on irrelevant issues."  *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982) (emphasis omitted).  Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence, and the fact is of consequence to deciding the action.  MRE 401.  Trial courts "retain wide latitude" to impose reasonable limits on cross-examination when concerned about questioning that is repetitive or has only a marginal relevance.  *People v Gaines*, 306 Mich App

---

[4] Briefly, defendant argues that if the trial court did not err by denying his request for *in camera* review of the victim's privileged records under *Stanaway*'s framework, then that framework violates defendant's due process rights.  Whatever the merits of this argument, it is fruitless for this Court to consider them.  The *Stanaway* Court clearly ruled that the framework it outlined properly balanced "a defendant's due process rights" with "the state's pronounced interest in its evidentiary counseling privileges," *id*. at 676-677, and *Stanaway* remains good law.  We are therefore bound to follow it.  See *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987) (explaining vertical stare decisis and admonishing this Court for not following a binding ruling of our Supreme Court, despite that, in so doing, this Court "correctly anticipated our [Supreme Court's] holding").

289, 316; 856 NW2d 222 (2014) (quotation marks and citation omitted). "Defendants are, however, guaranteed a reasonable opportunity to test the truth of a witness'[s] testimony." *Adamski*, 198 Mich App at 138.

As defendant acknowledges on appeal, although the trial court stated a preference to not have recross-examination, the court did not have a blanket policy prohibiting recross-examination. Indeed, the court allowed defendant to conduct a recross-examination of a witness in this case when he requested it and the prosecution did not object. Defendant's issue on appeal centers on the court's denial of his request to conduct a recross-examination of Detective Beckwith.

During the direct examination of Detective Beckwith, he testified that the victim reported that defendant had a mole or birthmark on his buttocks. During cross-examination, Detective Beckwith testified that the victim informed him that defendant had a flat mole on his buttocks and that, when he interviewed defendant, the detective did not take defendant up on his offer to view his buttocks. On redirect examination, the prosecutor asked Detective Beckwith if he was aware of whether moles could be removed, and the detective testified that he was aware that they could be removed. He then agreed that even if he had viewed defendant's buttocks, the lack of a mole or birthmark would not have caused him to withdraw his warrant for defendant's arrest.

Following this redirect examination, defense counsel asked the court for the opportunity to conduct a recross-examination. The parties then engaged in an off-record discussion with the court. When the court came back on the record, it explained as follows:

> The Court's typical position is not to allow recross. I did so earlier in the trial with another witness because there was no objection from the opposing party. And, at the bench [defense counsel] offered a—made an offer of proof with regard to the question he wished to ask regarding—it was regarding the issue of the mole and it's [sic] discovery or lack of discovery, and I think it related to [the prosecutor's] question on redirect, which was that moles can be removed and [defense counsel] wished to inquire again of the witness.
>
> I think when the police may—may have been aware of that information and what stage in the proceedings. I indicated to counsel that I would not allow recross on that.

Defendant argues that this ruling deprived him of his right to confrontation because the victim misidentified the mole and that "may have affected the decision to prosecute." But Detective Beckwith testified that the existence of the mole was not dispositive, and that the absence of any mole would not have affected his decision to pursue charges. This eliminates the possibility that further questioning about the mole would have revealed any relevant information about the detective's decision to pursue charges against defendant. Defendant does not identify in his brief any additional testimony that he intended to elicit from Detective Beckwith or how that testimony would have favored his defense. We accordingly conclude that the court did not plainly violate defendant's confrontation right by prohibiting recross-examination.

## IV. SENTENCING

Defendant next argues that (1) the court erred by imposing a consecutive sentence and (2) his sentence was unreasonable and disproportionate. Neither issue warrants appellate relief.

### A. CONSECUTIVE SENTENCING

Defendant's consecutive-sentencing argument does not warrant appellate relief because the trial court already amended the judgment of sentence to provide that all five CSC-I counts will run concurrently. The error that defendant identifies on appeal has thus already been corrected. Defendant claims that he is raising this issue in case the trial court amends his judgment of sentence to reimpose consecutive sentencing, but this assertion all but concedes that defendant's argument is not ripe for adjudication, so we will not address it. See *People v Hart*, 129 Mich App 669, 674; 341 NW2d 864 (1983).

### B. PROPORTIONALITY

Defendant next challenges the proportionality of his within-guidelines sentence. Within-guidelines sentences are reviewed for reasonableness. *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.). A review for reasonableness asks whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). The abuse-of-discretion standard recognizes that there is a range of reasonable and principled outcomes, and the trial court's decision must fall within that range. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). The principle of proportionality requires that a sentence imposed be proportionate to the seriousness of the offense and the background of the offender. See *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). So, reviewing a sentence for reasonableness asks whether the sentence imposed falls within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender.

Previously, this Court was required to affirm a within-guidelines sentence so long as the trial court correctly scored the sentencing guidelines and relied upon accurate information in determining the defendant's sentence. MCL 769.34(10). In *Posey*, however, a majority of our Supreme Court struck this requirement as unconstitutional. See *Posey*, 512 Mich at 326 (Opinion by BOLDEN, J.); *Id*. at 361 (CAVANAGH, J., concurring); *Id*. at 391 (WELCH, J., concurring). In so doing, *Posey* held that a within-guidelines sentence is now merely *presumed* proportionate, and the defendant bears the burden of overcoming this presumption. *Id*. at 357, 360 (Opinion by BOLDEN, J.). While "the guidelines remain highly relevant to sentencing decisions," *id*. at 360, " 'the key test is whether the sentence is proportionate to the seriousness of the matter,' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. A proportionate sentence will generally "give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense," though sentencing courts "are not required to consider each of these factors when imposing a sentence." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).

The trial court sentenced defendant to a within-guidelines sentence of 15 to 50 years' imprisonment for each of defendant's five CSC-I convictions, and defendant principally argues that, in light of his advanced age, this sentence is disproportionate. That is, defendant attempts to overcome the presumed proportionality of his within-guidelines sentence by stressing that he was 69 years old at the time of sentencing, so he would not be eligible for parole until he was about 85 years old. But, as this Court recently explained, the mere fact that a defendant will be of advanced age by the time he or she is eligible for parole "is insufficient to overcome the presumption of proportionality." *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5-6.[5]

Defendant also stresses that he "has no prior record," but he fails to explain why this renders his within-guidelines sentence disproportionate. The guidelines, after all, use prior record variables to take a defendant's prior record into account when determining an appropriate sentence. That is, defendant's within-guidelines sentence was calculated on the basis of the fact that he had no prior record. Because defendant's lack of a prior record was explicitly considered by the guidelines, we conclude that this fact cannot overcome the presumption that defendant's within-guidelines sentence was disproportionate without some explanation as to why defendant's lack of a prior record was not properly accounted for by the guidelines.[6]

Defendant lastly highlights his background as a family man and active member of his community as demonstrated by the "[e]leven neighbors and family members [who] testified on his behalf." While a trial court is free to consider such facts about the offender when fashioning a sentence, we question whether these are the types of considerations that would render a within-guidelines sentence disproportionate. But we need not resolve this question because, assuming that these considerations could render a within-guidelines sentence disproportionate, they do not here in light of the severity of the offenses for which defendant was convicted.

When sentencing defendant, the trial court focused on the egregiousness of defendant's conduct underlying his offenses. The trial court noted that defendant was found to have kept the victim hostage for most of her preteen, teenage, and early adult life; he followed her to her school, her work, and other places; she was not free from his presence for years; defendant inhibited the victim's growth and raped her for her entire adolescence; and "the reason [he] did it was for [his] own selfish, sexual purposes." The court also believed that the guidelines did not properly capture defendant's conduct of exploiting the young victim for over a decade by taking advantage of his

---

[5] To the extent that defendant argues that he was sentenced to a "de facto life sentence," that argument, too, was dispelled by *Purdle*. The defendant in *Purdle* was sentenced to over 55 years in prison and would not be eligible for parole until he was 89 years old. See *Purdle*, ___ Mich App at ___; slip op at 3, 5. This Court rejected the defendant's argument that he was effectively sentenced to "life in prison," explaining that the defendant "received a term of years sentence." *Id*. at ___; slip op at 5. The same is true here.

[6] We also note that the trial court explicitly referenced defendant's lack of a prior record when sentencing defendant, demonstrating that even if the guidelines had not considered this fact, the trial court still did.

relationship with her as an authority figure—the court described the guidelines' scoring of offense variable 10 (exploitation of a vulnerable victim) as "woefully inadequate." Considering the severity of defendant's offenses, defendant's minimum sentence of 15 years' imprisonment was within the range of reasonable and principled sentences that accurately reflected the seriousness of the offense and the background of the offender, even considering his background as a family man and active member of his community.[7]

Defendant also contests the proportionality of the maximum term of his sentence, which we will briefly address. With limited exceptions, "[t]he maximum penalty provided by law shall be the maximum sentence in all cases . . . ." MCL 769.8(1). Although defendant takes issue with the length of his maximum sentence, he does not dispute that the trial court could have sentenced him "for life or for any term of years." MCL 750.520b(2)(a). Again, defendant's crime was serious in nature, and the longstanding duration of the crime suggested that defendant was unable to conform his behavior to the law. Given this, we conclude that the trial court's decision to sentence defendant to a maximum term-of-year sentence instead of a life sentence was proportionate and not an abuse of discretion.

## V. RESTITUTION

Lastly, defendant argues that the restitution order is partially invalid because it compensates the victim for the loss of her vehicle, which was not part of the direct losses she sustained from defendant's criminal conduct constituting the sentencing offense. We agree.

A criminal defendant preserves a challenge to the assessment of restitution by challenging the court's authority to order restitution at the trial court level. *People v Foster*, 319 Mich App 365, 374; 901 NW2d 127 (2017); *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003). Although defendant raised this restitution issue in his motion to remand in this Court, there is no dispute defendant did not raise this objection in the trial court.[8] We therefore consider this issue unpreserved and review it for plain error affecting substantial rights. See *Carines*, 460 Mich at 763. A defendant is entitled to appellate relief under this standard if they can establish (1) that an error occurred, (2) that the error was clear and obvious, and (3) that the obvious error affected

---

[7] Defendant also contends that his sentence was disproportionate because the trial court could have given him a shorter sentence that would still serve the goals of sentencing. But that will be true of virtually every case because, as our standard of review recognizes, there is a range of reasonable and principled sentences that can reflect the seriousness of a defendant's offense and the defendant's background. That is why the pertinent question on appeal is not whether a shorter sentence can serve the goals of sentencing but whether the trial court abused its discretion by imposing the sentence that it did.

[8] Defendant contends that his remand motion preserved this issue pursuant to MCR 6.429(C). But that rule, by its terms, only applies to issues "challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range." MCR 6.429(C).

the defendant's substantial rights. *Id.* Establishing the third requirement generally requires a showing of prejudice. *Id.*

Crime victims have a constitutional right to restitution. Const 1963, art 1, § 24(1). The Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*, provides, in relevant part, that with limited exceptions,

> when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of *the defendant's course of conduct that gives rise to the conviction* or to the victim's estate. [MCL 780.766(2) (emphasis added).]

The CVRA defines the term "victim" to mean "an individual who suffers direct or threatened physical, financial, or emotional harm *as a result of the commission of a crime*." MCL 780.766(1) (emphasis added). MCL 780.767(1) adds that when determining the amount of restitution to award, "the court shall consider the amount of the loss sustained by any victim *as a result of the offense*." (Emphasis added.) In *People v McKinley*, 496 Mich 410, 421; 852 NW2d 770 (2014), our Supreme Court held that these provisions' use of the "as a result of" language means that restitution ordered under "MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." In *People v Corbin*, 312 Mich App 352, 369; 880 NW2d 2 (2015), this Court built upon *McKinley*'s "causal relationship" language, holding that both factual and proximate cause must be established to award restitution under the CVRA. "In determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have occurred?" *Id.* (quotation marks and citation omitted). "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions." *Id.* (quotation marks and citation omitted).

Defendant challenges whether the loss of the victim's car was proximately caused by his course of conduct giving rise to his CSC-I convictions.[9] We agree with defendant that it was not.

The victim testified in detail about defendant's sexual abuse over 13 years, about her trauma, and how she was able to flee defendant's home with the help of relatives. She explained that, when she left, she took only a suitcase of clothes and personal items because she cared more about her freedom than her personal items. While the victim's mother was able to retrieve some of the victim's items from defendant's home, she was not able to retrieve all of them. In particular, the victim left her new car at defendant's home. She acknowledged that she could have arranged for her brother or his wife to take her car when she left defendant's home, but she was in a fight-or-flight mentality and was not thinking about the car. Thereafter, the victim never arranged for the return of the vehicle, and there is no evidence in the record that it was ever returned to her.

---

[9] Defendant does not challenge the order of restitution to the extent that it related to the victim's therapy costs.

The prosecution contends that these facts establish that the loss of the victim's car was the result of defendant's commission of CSC-I because defendant's years of abusing the victim caused her to be so fearful that she left her property behind without thinking just to get away from him, and she "cannot be expected to overcome years of abuse and fear" to retrieve that property. This establishes that defendant's sexual abuse was a factual cause of the victim's loss of her property, but it does not establish that it was a proximate cause—the victim leaving her car at defendant's home and never arranging for its return was not "a 'direct and natural result' of" defendant's sexually abusing the victim. *Id.* (quotation marks and citation omitted). Because the victim's loss of her car was not a harm that she suffered "as a result of" defendant's crimes, the trial court erred by ordering defendant to pay restitution for the victim's loss of her car.

This error was obvious because the victim's loss of her car was clearly not a direct and natural result of defendant sexually abusing her, and the obvious error affected defendant's substantial rights because defendant was being ordered to pay restitution that he should not have been ordered to pay. We accordingly hold that the trial court ordering defendant to reimburse the victim for her vehicle as restitution amounted to a plain error affecting defendant's substantial rights. That portion of the ordered restitution is therefore vacated.

Defendant's convictions are affirmed, and his sentence is affirmed in part and vacated in part. The case is remanded for the trial court to amend the ordered restitution to remove the requirement that defendant reimburse the victim the cost of her vehicle. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi

-11-